Case 1:21-cr-00352-JEB Document 1-1 Filed 0./../.. Page 1 of 15

Case: 1:21-mj-00290
Assigned To : Harvey, G. Michael
Assign. Date : 03/08/2021
Description: Complaint w/ Arrest Warrant

**STATEMENT OF FACTS**

1. Your affiant, Julianna Dippold, is a special agent assigned to the Seattle Field Office of the Federal Bureau of Investigation. Since joining the FBI, I have been trained in interview and interrogation techniques, investigative techniques, legal concepts, evidence collection and preservation, computer-enabled fraud, blockchain analysis, and financial fraud. In my duties as a special agent, I have been involved in investigations of public corruption, financial fraud, health care fraud, conspiracy, computer intrusion and crimes against children. I have participated in the execution of search warrants involving violent crimes, fraud, drug or computer related offenses, and the search of digital devices. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a special agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

2. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

6. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President

Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

7. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

8. On February 3, 2021, a tipster (T-1) contacted the FBI National Threat Operations Center (NTOC) to report that s/he believed that MARC BRU had traveled to and potentially participated in the riot at the U.S. Capitol on January 6, 2021. T-1 relayed that s/he had had a conversation with BRU shortly before January 6, 2021, in which he stated he was traveling to Washington, D.C. to "witness history in the making." T-1 thought BRU meant that he was going to watch the Presidential Inauguration, but BRU denied this. When T-1 asked why he was going to D.C., he replied "you are about to see, it's going to be big."

9. T-1 further relayed that, after the riot on January 6, 2021, an individual (T-2) who works for T-1 searched Facebook for BRU and located what the individual believed to be BRU's Facebook profile page. T-2 saw a video showing BRU apparently at or near the Capitol building posted to what T-2 understood to be BRU's Facebook profile page. T-1 stated that the Facebook profile page at issue has since been taken down or made non-public. T-1 is an acquaintance of BRU's and has met BRU in person several times. T-1 and T-2 have both been interviewed by the FBI.

10. T-1 stated that ***-***-6173 is MARC BRU's phone number. In addition, two open-source databases list that phone number as being associated with MARC BRU, and the Vancouver Police Department has police reports stating that that phone number is associated with a "MARC ANTHONY BRU."

11. I have also accessed open-source materials located on the Pacific Northwest (PNW) Resistance's Twitter account. In reviewing that Twitter account, it appears the account is associated with the anti-fascist movement and purports to attempt to publicly identify individuals who are associated with or are members of certain groups. Beyond that, and particularly given that at this time I do not know who operates the account, I am not aware of the credibility or lack thereof of the information posted on the account. Regardless, the following photographs were located on this website:



12.     T-2 identified this individual as MARC BRU.  The following is a screenshot of a Facebook account profile page under the name "MARC BRU."  The photograph depicts an individual that T-1 and T-2 recognized to be MARC BRU:



13.     I have compared these photographs to the Washington Department of Licensing photograph for MARC BRU, and believe they show the same person: MARC BRU.

14.     In reviewing images and video that has been downloaded by the FBI from various open-source websites, as well as from private citizens that have provided images and video to the FBI, I found images and video that feature an individual, whom I believe to be MARC BRU based on his appearance and my comparison of these photographs to BRU's Washington Department of Licensing photograph, outside of the Capitol building.  Based on that identification, I refer to this

individual as "MARC BRU" or "BRU" throughout the remainder of this affidavit. In the image on the left below, BRU is making a hand symbol—the "okay" hand symbol—that I recognize as being associated with the Proud Boys. These images are included below (the green circles in the photograph on the left were not added by the author):




15.     From these images, I saw that MARC BRU was wearing light blue jeans, dark-colored boots or shoes, a black zip-up hoodie, a gray or blue button-up shirt underneath, and black gloves. MARC BRU also appeared to have clear, plastic swim goggles around his neck and a neck gaiter that featured yellow, red, and green colors.[1]  Where the zipper to BRU's hoodie is located, there appears to be something clipped to the inside of the hoodie with an antenna extending upward to the right of his neck, as shown in the zoomed-in portion of the above photograph:

---

[1] T-1 does not recall BRU having significant facial hair at the time of her conversation with him before January 6, 2021. That may be true, given the time between that conversation and January 6, 2021. In any event, T-1 and T-2 each identified BRU based on the Facebook photograph included above of him with facial hair.



16. In a video posted to YouTube by The Sun newspaper, titled "Live: Pro-Trump demonstrators gather in Washington DC to decry Biden victory," it appears that Ethan NORDEAN, a known member of the Proud Boys, is leading a group of men in a march. Ethan NORDEAN addresses this group as "Proud Boys." Amongst this group when it reaches the East side of the Capitol, at the 1:30:03 mark of the video, is an individual who appears to be BRU, as pictured below:



17. After the events of the above video took place, MARC BRU was observed in video that captured the pro-Trump crowd that gathered at the West Plaza of the Capitol building. About

30 seconds into the video, MARC BRU can be seen standing next to Ethan NORDEAN (circled in green below), apparently holding his phone aloft, as pictured below; his distinctive neck gaiter and swim goggles are visible elsewhere in this video:



18.     Later in this video and in other photographs of the West plaza within minutes of that time, BRU can be seen holding what appears to be his cell phone in his hand. The following photograph, taken from the same vantage point as the video, shows BRU in greater resolution, including his swim goggles, neck gaiter, short-cropped black hair, a black zip-up hoodie, a gray or blue shirt underneath, and a black glove on his left hand:



19. At the 5:19 mark of the aforementioned video, BRU is observed again in the crowd, but appears to have moved closer to the line of law enforcement officers attempting to hold back the crowd. Just prior to this screenshot, officers on the front line were assaulted by members of the crowd. BRU is observed pulling his mask over his face. Shortly thereafter, BRU also appears to have put the swim goggles (seen in previous photographs) over his eyes. Seconds after this, officers begin pushing into the crowd. But instead of retreating, it appears to your affiant that BRU at first remains in the same area before advancing towards officers. The following pictures depict this.





20. Around the 7:50-minute mark, BRU appears to grab a police barricade, in an apparent attempt to wrench it away from police. Based on news coverage, I am aware that members of the crowd did fight with officers to attempt to remove the barricades.



21. While conducting open-source research, I further located two photographs that appear to depict the same individual inside of the Capitol building, near an entrance to that building. Those photographs were taken, according to the Getty Images website, by a Getty photographer. BRU is circled in red in the photographs below:





22.     A zoomed-in version of the first photograph is below:



23.     This individual's clothing and general appearance match that of the person (whom I identified as "MARC BRU" above) in the photographs included earlier from outside of the Capitol building.  For example:

- This individual's hair is the same color (black) and approximate length as that of MARC BRU outside of the Capitol building on that day.

- This individual appears to be wearing the same black zip-up hoodie, zipped to the mid-chest, and the same color button-up shirt underneath, buttoned to the same button, as MARC BRU was wearing outside of the Capitol building on that day.

- This individual is wearing what appear to be the clear plastic swim goggles around his neck, just like MARC BRU did outside of the Capitol building on that day.

- This individual has a neck gaiter that includes the same colors (yellow, green and red) as those on the gaiter worn by MARC BRU outside of the Capitol building on that day.

- This photograph also shows what appears to be the same item with an antenna, clipped to the inside middle of the black zip-up hoodie sweatshirt and circled in red above, that MARC BRU was wearing clipped to the inside middle of his hoodie outside of the Capitol building on that day.  In this photograph the item appears more clearly to be a walkie-talkie.

24. Given all of those similarities, I believe the individual featured in these photographs to also be MARC BRU.

25. On March 1, 2021, I reviewed CCTV footage that captures the area outside of the Senate Gallery. This footage was provided to the FBI by the U.S. Capitol Police. The area captured by the footage screenshots include below, is located on the third floor of the Capitol building and leads into the second floor of the Senate Gallery. In reviewing the footage between approximately 2:30 PM EST and 2:50 PM EST, I observed an individual enter the Gallery and, a period of time later, exit the Gallery. I observed that this individual (identified in the photographs below) appears to be the same individual (whom I have identified as MARC BRU above) featured in the photographs outside and inside the Capitol building included earlier in this affidavit. For example, this individual's hair color and approximate length matches those of MARC BRU on that day. His black hoodie sweatshirt and light blue jeans also match those of MARC BRU in other photographs from that day. This individual's neck gaiter appears to match the neck gaiter seen on MARC BRU both inside and outside of the Capitol building. And this individual is wearing black gloves and dark shoes or boots, just like MARC BRU in the photograph outside of the Capitol building. Finally, in the last photograph included below from the CCTV footage, BRU's facial hair is visible, and it approximately matches the facial hair of BRU as captured by photographs of him outside of the Capitol building on that day.

26. The following two photographs show this individual just prior to entering the Senate Gallery.





27.     The next two photographs show apparently this same individual exiting the Senate Gallery.





28. According to records obtained through a search warrant which was served on AT&T Corporation, on January 6, 2021, in and around the time of the incident, the cellphone associated with \*\*\*-\*\*\*-6173 was identified as having utilized a cell site consistent with providing service to the geographic area that includes the interior of the U.S. Capitol building. 11 datasets were returned for the cellphone associated with \*\*\*-\*\*\*-6173. The first hit occurred at 2:35 PM EST and the last at 2:49 PM EST.

29. The FBI has reviewed the available information for the phone number \*\*\*-\*\*\*-6173 in order to determine whether there was any evidence that devices associated with that number could have lawfully been inside the U.S. Capitol on Building January 6, 2021. The information for that number did not match any information for persons lawfully within the Capitol. Accordingly, I believe that the individual possessing this device was not authorized to be within the U.S. Capitol building on January 6, 2021.

30. Based on the foregoing, your affiant submits that there is probable cause to believe that MARC BRU violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off,

or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

31. Your affiant submits there is also probable cause to believe that MARC BRU violated 40 U.S.C. § 5104(e)(2)(B), (D), and (G), which makes it a crime to willfully and knowingly (B) enter or remain in the gallery of either House of Congress in violation of rules governing admission to the gallery adopted by that House or pursuant to an authorization given by that House; (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

32. Your affiant submits there is also probable cause to believe that MARC BRU violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

33. Finally, your affiant submits there is probable cause to believe that MARC BRU violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

_____
JULIANNA DIPPOLD, SPECIAL AGENT
FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 9th day of March, 2021.

_____
G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE