**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-mj-290** |
| | **:** | |
| **MARC ANTHONY BRU,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' MOTION FOR PROTECTIVE ORDER**

The United States of America hereby respectfully moves the Court for the entry of a

protective order governing the production of discovery by the parties in the above-captioned

case.  Hereinafter, any reference to the term "Defendant" refers to each individual defendant

captioned above.

1.       Defendant is charged via indictment with offenses related to crimes that occurred

at the United States Capitol on January 6, 2021.  In brief, on that date, as a Joint Session of the

United States House of Representatives and the United States Senate convened to certify the vote

of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had

gathered outside forced entry into the U.S. Capitol, including by breaking windows and by

assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.

Scores of individuals entered the U.S. Capitol without authority to be there.  As a result, the Joint

Session and the entire official proceeding of the Congress was halted until the Capitol Police, the

Metropolitan Police Department, and other law enforcement agencies from the city and

surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure

the safety of elected officials.  This event in its entirety is hereinafter referred to as the "Capitol

Attack."

2.      The investigation and prosecution of the Capitol Attack will likely be one of the

largest in American history, both in terms of the number of defendants prosecuted and the nature

and volume of the evidence.  Over 300 individuals have been charged in connection with the

Capitol Attack.  The investigation continues and the government expects that at least one

hundred additional individuals will be charged.  While most of the cases have been brought

against individual defendants, the government is also investigating conspiratorial activity that

occurred prior to and on January 6, 2021.  The spectrum of crimes charged and under

investigation in connection with the Capitol Attack includes (but is not limited to) trespass,

engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of

government property, theft of government property, assaults on federal and local police officers,

firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of

destructive devices, and conspiracy.

3.      Multiple individuals charged or under investigation are: (a) charged or expected

to be charged with crimes of violence; (b) associated with anti-government militia organizations

and other groups (e.g., Proud Boys, Oathkeepers, Three Percenters, Cowboys for Trump) that

deny the legitimacy of the United States government; (c) coordinated and/or participated in the

violent events which took place at the Capitol; and (d) have made statements indicating an

intention to continue in similar violent endeavors until the current administration is overthrown.

Dozens of the individuals charged have been detained pending trial because a judicial officer

determined that the release of such person will not reasonably assure the appearance of the

person, as required; will endanger the safety of any other person or the community; and/or will

pose a risk of obstruction of justice.

4.      In connection with the above-described cases and on-going investigations, law

enforcement and the government have obtained and continue to obtain voluminous amounts of

information and evidence relating to both charged and uncharged individuals which may be

discoverable pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule

5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405

U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.  By way of illustration, such

information and evidence includes but is not limited to: (a) more than 15,000 hours of

surveillance and body-worn camera footage from multiple law enforcement agencies; (b)

approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic

communication providers; (d) over 210,000 tips; and (e) over 80,000 reports and 93,000

attachments related to law enforcement interviews of suspects and witnesses and other

investigative steps.

5.      Many of the above-described materials may contain sensitive information, such as

(a) personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal

Procedure, as well as telephone numbers, email addresses, driver's license numbers, and similar

unique identifying information; (b) information regarding the government's confidential sources;

(c) information that may jeopardize witness security; (d) contact information for, photographs of,

and private conversations with individuals that do not appear to be related to the criminal

conduct in this case; (e)  medical or mental health information, (f) sources and methods law-

enforcement officials have used, and will continue to use, to investigate other criminal conduct

related to the publicly filed charges; and (g) tax returns or tax information.  Additional sensitive

materials include surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds, s*ee* Attachment A (Declaration of Thomas A. DiBiase, General Counsel for the United States Capitol Police), and repair estimates obtained from the Architect of the Capitol that constitute procurement information.

6.      Under the Federal Rules of Criminal Procedure, a court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" relating to discovery by entering a protective order. Fed. R. Crim. P. 16(d)(1). "The burden of showing 'good cause' is on the party seeking the order[.]" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citations and alterations omitted).  Once a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order. *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *Cordova*, 806 F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

7.      "Protective orders vary in range and type 'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need.'" *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012).  "Courts use protective orders . . . to expedite the flow of discovery in cases involving a large amount of sensitive information." *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018)(internal quotations and citations omitted).

8.      Courts also use protective orders when necessary to protect the integrity of on-going investigations.  "[W]here public disclosure of certain materials might officially reveal the

sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order." *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013), citing *United States v. Bin Laden*, No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001)(noting that the court adopted a protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants").

9.      In determining whether to issue a protective order, courts also take into account "the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.'" *Cordova*, 806 F.3d at 1090 (citations and alterations omitted). "Considering the type of crime charged helps assess the possible threats to the safety and privacy of the victim. Defendants accused of securities fraud or shoplifting, for instance, may not pose as great a danger to victims as those charged with crimes of violence." *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019).  "A long record of convictions for violent crimes may suggest a substantial danger to the safety of others. Similarly, a history of failures to follow court orders may justify a more restrictive protective order." *Id.*

10.      In this case, there is good cause to enter the attached proposed protective order. The entry of the order will facilitate the government's ability to provide voluminous discoverable materials expeditiously, while adequately protecting the United States' legitimate interests.  The Order is reasonable – In the event of a dispute, the Order authorizes the government to remove or reduce a sensitivity designation after a discussion with defense counsel. Further, whenever the redaction of specified information will resolve the basis for which a sensitivity designation was applied, the Order provides that the United States will agree to redaction, and such redaction will

render the materials at issue no longer subject to the Order.  In addition, the Order explicitly

exempts materials that (1) are, or later become, part of the public court record, (2) were derived

directly from Defendant or that pertain solely to Defendant – e.g., Defendant's own financial

records, telephone records, digital device downloads, social media records, electronic

communications, arrest records, and statements to law enforcement, or (3) that the defense

obtains by means other than discovery.  Finally, the Order is clear that the burden for showing

the need for any sensitivity designation always remains with the United States.

   11. The government asked counsel for defendant Marc Bru whether he opposed this

motion on April 12, 2021 and April 23, 2021.  Counsel has not informed the government

whether Mr. Bru opposes this motion.  Therefore, the government has filed this motion assuming

it will be opposed by Mr. Bru.

   WHEREFORE, to expedite the government's provision of discoverable materials, and to

adequately protect the United States' legitimate interests, the government requests that pursuant

to the Court's authority under Fed. R. Crim. P. 16(d)(1), the Court enter the attached proposed

order.

       Respectfully submitted,

       CHANNING D. PHILLIPS
       Acting United States Attorney
       DC Bar No. 415793

  By: */s/ William Dreher*
    WILLIAM DREHER
    Assistant United States Attorney
    D.C. Bar No. 1033828
    700 Stewart Street, Suite 5220

Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov