UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-352 JEB |
| : | |
| MARC BRU, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION TO CONTINUE AND
TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America hereby requests that this Court, at or after the arraignment scheduled for June 4, 2021, continue the above-captioned proceeding for 60 days, schedule a Status Hearing approximately 60 days from that date, and exclude the time until that Status Hearing from the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).   In support of its motion, the government states as follows:

**FACTUAL BACKGROUND**

Defendant is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.   In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there.   As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the

Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence. Over 400 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that at least one hundred additional individuals will be charged. While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021. The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

Defendants charged and under investigation come from throughout the United States, and a combined total of approximately 1,400 search warrants have been executed in almost all fifty states and the District of Columbia. Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington

County Police Department, the Prince William County Police Department, the Maryland State Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police. Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 2,000 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 237,000 tips, of which a substantial portion include video, photo and social media; and (e) over 75,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps. As the Capitol Attack investigation is still on-going, the number of defendants charged and the volume of potentially discoverable materials will only continue to grow. In short, even in cases involving a single defendant, the volume of discoverable materials is likely to be significant.

The United States is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500. Accordingly, the government, in consultation with the Federal Public Defender, is developing a comprehensive plan for handling, tracking, processing, reviewing and producing discovery across the Capitol Attack cases. Under the plan, the discovery most directly and immediately related to pending charges in cases involving detained defendants has, in a number of cases, been provided, and will be provided in other cases on an on-going basis. Cases that do not involve detained defendants will follow thereafter. Such productions will also be supplemented on an on-going basis. In the longer term, the plan will include a system for storing,

organizing, searching, producing and/or making available voluminous materials such as those described above in a manner that is workable for both the government and hundreds of defendants. The government is in the process of selecting a vendor that will create and manage a document review database that will facilitate this discovery review process. The government is also already processing materials in a way that renders them database-ready to minimize the amount of time that it will take to upload discovery materials into a conforming format in the database, once it is ready. This latter portion of the plan will require more time to develop and implement, including further consultation with the Federal Public Defender.

Defendant in this case is charged by indictment with seven counts. Two are felonies: Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3), and Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2). *See* Dkt. 12. Five are misdemeanors: Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2); Entering and Remaining in the Gallery of Congress, in violation of Title 40, United States Code, Section 5104(e)(2)(B); Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G). *See id.* The defendant is alleged to have entered the U.S. Capitol's restricted grounds on January 6, 2021, approached the line of law enforcement officers who were defending the entrances to the U.S. Capitol building on the lower west plaza of that building, and to have attempted to pull away a police barricade used by those officers to defend that area. *See*

Dkt. 1-1.  The defendant is also alleged to have later entered the U.S. Capitol building itself, and to have entered the gallery of the United States Senate.  *Id.*

The defendant was arrested on March 30, 2021 and released on bond; he remains out of custody.  *See* Dkts. 5, 7.  At his initial appearance in this District on April 9, 2021, the government orally moved for a continuance and to exclude time under the ends-of-justice provisions of the Speedy Trial Act.  Dkt. 9.  Magistrate Judge Harvey granted the government's motion, set a preliminary hearing for June 7, 2021, and excluded the 59 days between April 9, 2021 and June 7, 2021 from calculation under the Speedy Trial Act.  *See* Dkt. (Minute Order of April 9, 2021).  Bru was indicted on May 12, 2021.  Dkt. 12.

In this case, the government provided defense counsel with preliminary discovery on June 2, 2021.  That discovery has not yet been processed or Bates-stamped, but the government has provided it to ensure that defense counsel has access to the materials the government views, at this preliminary stage, as among the most relevant to the defendant's case.  However, significant materials remain outstanding.  For example, electronic devices that were in the defendant's possession and that were seized pursuant to a search warrant on March 30, 2021 have been submitted to undergo a filter review process, based on the defendant's representation (through his counsel at the time) that the devices may contain potentially privileged communications.  That filter review process is ongoing.  However, as noted above, the government has seized roughly 2,000 digital devices in these cases already, many of which have been sent through a similar filter review process.  Completing that process will take time.

**ARGUMENT**

Pursuant to the Speedy Trial Act, an indictment charging an individual with the

5

commission of an offense generally must be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. 18 U.S.C. § 3161(a).  Further, as a general matter, in any case in which a plea of not guilty is entered, a defendant charged in an information or indictment with the commission of an offense must commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.   18 U.S.C. § 3161(c)(1).

Section 3161(h) of the Speedy Trial Act sets forth certain periods of delay which the Court must exclude from the computation of time within which a trial must commence.   As is relevant to this motion for a continuance, pursuant to subsection (h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).   This provision further requires the Court to set forth its reasons for finding that that any ends-of-justice continuance is warranted.  *Id.*   Subsection (h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

(i)   Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii)   Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
      . . .

> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).   Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An interests-of-justice finding is within the discretion of the Court.   *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).   As described above, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice.   Moreover, the investigation is reactive; the government is continually receiving massive quantities of new discovery, which it must continue to sift through while it reviews, processes, and produces its existing discovery.   Developing a system for storing and searching, producing and/or making available voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will take time. Even after a system generally agreeable to the government and the Federal Public Defender is

designed and implemented, likely through the use of outside vendors, it will take time to load, process, search and review discovery materials. Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution. Given that it has still only been less than five months since January 6, 2021, the government has moved with utmost speed to manage the numerous overlapping processes required to identify and produce the discovery in these complex investigations.

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019)(Upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019)(Upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013)(Upholding ends-of-justice continuance

of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010)(Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules"); *United States v. Stockton*, No. 3:15-CR-45, 2015 WL 2185562, at *2 (E.D. Tenn. May 7, 2015) (considering the case "complex for purposes of the Speedy Trial Act" under Section 3161(h)(7)(B)(ii) "due to the number of defendants" in "all related cases" in a large drug investigation, "including the voluminous discovery stemming therefrom," notwithstanding defendant's objection that "he was the sole defendant in his indictment and that to delay the trial based on other related cases would prejudice his rights under the Speedy Trial Act").

The facts of this case bear out the ways in which the evidence is overlapping. The government has reviewed photographs, body-worn camera footage, and bystander videos that capture numerous aspects of the crowd's assaults on law enforcement officers on the lower west terrace of the U.S. Capitol building, where this defendant first went after entering U.S. Capitol

grounds. Individual videos are being identified and processed in individual cases, but the government has not yet, and realistically could not yet have, identified every potential video or photograph showing the defendant's conduct in that area on January 6, 2021.

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice. Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendant in a speedy trial.

Moreover, the ongoing COVID-19 public health crisis further demonstrates that a continuance here serves the ends of justice. On March 5, 2021, Chief Judge Howell issued Standing Order No. 21-10, which allows for a "limited" resumption of criminal jury trials under "stringent restrictions" required to protect the public health. *See In Re: Limited Resumption of Criminal Jury Trials in Light of Current Circumstances Relating to the COVID-19 Pandemic*, Standing Order No. 21-10 (BAH).

Standing Order 21-10 addresses the need to exclude time under the Speedy Trial Act in light of these COVID-19-related restrictions. The Chief Judge notes that the time period from March 17, 2020 through March 15, 2021 had already been excluded under the Speedy Trial Act in all criminal cases. *Id.* at 5. The Court then notes that, while it anticipates a limited resumption of criminal trials, the Court's plans permit "no more than one jury selection" to take place on "a

given day, and no more than three trials . . . will take place within the courthouse at one time" before August 31, 2021. *Id.* at 4-5. The Court therefore plans to prioritize trials based on factors such as length of detention, whether witnesses would be required to travel from out of town, and previously established trial dates. *Id.* at 4. Finally, noting the then-current statistics regarding COVID-19 case counts and other findings relating to the health and safety measures in this District that impact the ability of the Court to re-open safely for criminal trials, the Chief Judge finds that "for those cases that cannot be tried consistent with" the "health and safety protocols and limitations" set out by the Court's continuity of operations and master trial plans described above, the "additional time period from March 15, 2021 through August 31, 2021" will be "excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3151(h)(7)(A)." *Id.*

Consistent with that Standing Order, this Court should also exclude time for the period until the next status conference. The defendant is not detained and has only recently been charged; no trial dates have been set. Under the prioritization factors the Standing Order articulates, he likely cannot receive a trial date in the near term, given the capacity limitations described in the Standing Order, which the Chief Judge has found are required to protect public health and safety. The Court should therefore exclude the period between the arraignment and the next status conference, which the government will request occur 60 days after the arraignment, based on Standing Order 21-10's findings that (1) failing to follow the health and safety protocols set forth in the order, which limit the number of jury trials, would endanger public health and safety, and (2) that the ends of justice served by a continuance to protect public health and safety

and the fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A).

Government counsel notified the defense of the filing of this motion on June 3, 2021.

WHEREFORE, the government hereby requests that this Court, at or after the arraignment scheduled for June 4, 2021, continue the above-captioned proceeding for 60 days, schedule a Status Hearing approximately 60 days from that date, and exclude the time until that Status Hearing from the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By: /s/ *William Dreher*
WILLIAM DREHER
Assistant United States Attorney
D.C. Bar No. 1033828
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov