UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARC BRU,<br><br>Defendant. | Criminal Action No. 21-352 (JEB) |

### MEMORANDUM OPINION

Defendant Marc Bru was a member of the crowd that stormed the U.S. Capitol on January 6, 2021. He is charged with multiple criminal counts related to such conduct and has elected to proceed *pro se*. With trial approaching, the Government moves *in limine* to preclude certain evidence. The Court will grant the Motion in part and deny it in part.

**I.      Background**

Bru has been indicted on no fewer than seven counts. They are: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count I); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count II); Entering and Remaining in a Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count III); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count IV); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count V); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count VI); and Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and (2) (Count VII). See ECF No. 31 (Superseding Indictment).

The United States now moves *in limine* to restrict eight categories of evidence and argument at trial. See ECF No. 54 (Motion *in Limine*) at 1. Although Bru has failed to oppose the Motion, the Court will nonetheless independently analyze its requests.

## II. Legal Standard

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" Graves v. District of Columbia, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)). They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Id. at 10 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)). The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a "meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). This limits courts' ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." Id. at 324 (internal quotation marks omitted). At the same time, it falls within a court's discretion to exclude evidence that is not relevant or whose probative value is outweighed by prejudicial factors. Id. at 326; see also id. at 330 (noting that

evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues").

**III.    Analysis**

The Court considers in turn each of the eight types of evidence the Government seeks to exclude, grouping categories where appropriate.  See Mot. at 1.

A.  Camera Locations

The Government first moves to exclude information about the precise locations of Capitol Police cameras.  It also requests that, should the defense believe during the course of trial that such locations have become relevant, the Court conduct a hearing *in camera* to resolve the issue.  See Mot. at 3–5.  The Court recently granted a virtually identical Motion with the same proviso in place in another January 6th trial.  See United States v. Mock, No. 21-444, 2023 WL 3844604, at *2 (D.D.C. June 6, 2023).  It again finds that balance appropriate here.  Defendant is unlikely to need to probe the precise height and depth of individual security cameras; general descriptions of each camera's location, along with the video footage each shows, should suffice.  The Government, moreover, raises significant national-security concerns with identifying camera locations, which would reveal areas not under video surveillance and could result in security breaches.  See Mot. at 5; see also generally ECF No. 54-1 (Declaration of Thomas DiBiase) (explaining security concerns).  The Court will accordingly preclude the defense from questioning witnesses about the precise location of Capitol Police cameras, but will allow for the possibility of *in camera* proceedings should Bru believe that presentation of such locations becomes necessary during trial.

B.  Secret Service Tactics and Operations

The United States next moves to limit cross-examination of U.S. Secret Service witnesses, seeking to exclude testimony about specific agency tactics and operational details of its emergency protocols. See Mot. at 6–8; see also Mock, 2023 WL 3844604, at *2–3. Because the Government represents that these issues will be beyond the scope of direct examination, the Court will exclude such testimony — with the caveat that Defendant may cross-examine within the scope of direct testimony should the Government elicit these details there.

C.  Entrapment-by-Estoppel Defense

The Government next asks the Court to preclude Bru from raising entrapment by estoppel as an affirmative defense, also sometimes referred to as the "public authority" defense. See Mot. at 8–13. The Government specifically seeks to block Defendant from arguing that either President Trump or the Capitol Police authorized his actions on January 6. Id. at 8–13 (Trump), 13 (Capitol Police).

1.  *President Trump*

The Court once again concludes that former President Trump's statements "cannot support an entrapment-by-estoppel or public-authority defense." United States v. Carpenter, No. 21-305, 2023 WL 1860978, at *3 (D.D.C. Feb. 9, 2023). In its prior Opinion so holding, the Court relied on Judge John Bates' thorough analysis of the issue in United States v. Sheppard, No. 21-203, 2022 WL 17978837 (D.D.C. Dec. 28, 2022). As Judge Bates described there, such defenses are "available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." Carpenter, 2023 WL 1860978, at *2 (quoting Sheppard, 2022 WL 17978837, at *9). He concluded, however, that "Trump's statements at the January 6 rally do not plainly state or imply that entering the Capitol or interfering with the electoral

4

certification would be lawful." Id. at *3. As it has before, this Court adopts that reasoning here and concludes that Bru may not raise such a defense.

### 2. Law Enforcement

The Government also seeks to preclude the defense "from arguing that any failure of law enforcement to act rendered the defendant's conduct legal." Mot. at 13. The Court finds that such a ruling would be premature and should await the presentation of evidence at trial. The Court concluded as much in Carpenter and sees no reason to deviate from that bottom line here, particularly as this will be a bench trial. See 2023 WL 1860978, at *3. Such evidence may be admissible, for instance, to the extent that police inaction affected Defendant's knowledge or intent. The Court nonetheless will disallow such arguments if, at the close of evidence, Bru has not presented "sufficient evidence from which a reasonable [fact-finder] could find for the defendant on that theory." Id. (quoting United States v. Nwoye, 663 F.3d 460, 462 (D.C. Cir. 2011)).

### D. First Amendment

The Government next seeks to preclude Bru from arguing that he "enjoyed a First Amendment right to protest inside" the Capitol building and surrounding restricted area. See Mot. at 14. Bru has not argued that any of the relevant statutes are vague or overbroad, so the only question here is whether he may argue at trial that, as applied to him, the restrictions violate the First Amendment. The Court agrees with the Government that they do not.

The interior of the Capitol building is "a nonpublic forum where the government may limit First Amendment activities so long as the restrictions are reasonable in light of the purpose of the forum and are viewpoint neutral." Sheppard, 2022 WL 17978837, at *5 (internal quotation marks omitted) (quoting United States v. Nassif, No. 21-421, 2022 WL 4130841, at *4

(D.D.C. Sept. 12, 2022)). The restricted exterior areas of the Capitol, meanwhile, constitute traditional public fora that the Government may close only if the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Mahoney v. United States Capitol Police Bd., 566 F. Supp. 3d 1, 9 (D.D.C. 2022) (quoting Mahoney v. Doe, 642 F.3d 1112, 1117 (D.C. Cir. 2011)). The Government's restriction here satisfies both standards: it was content neutral, was narrowly tailored to safeguard the ongoing electoral-certification process, left ample alternative channels of communication available, and was reasonable in light of the ongoing legislative proceedings. Indeed, the Government cites numerous examples of other courts' upholding similar closures for similar reasons. See Mot. at 14–15 (citing Menotti v. City of Seattle, 409 F. 3d. 1113, 1129–30 (9th Cir. 2005) (upholding order closing parts of downtown Seattle to protests during World Trade Organization conference as security measure); Marcavage v. City of New York, 689 F.3d 98, 105 (2d Cir. 2012) (upholding sidewalk closures in area around 2004 Republic National Convention at Madison Square Garden, and explaining in particular that "there can be no doubting the substantial government interest in the maintenance of security at political conventions") (internal citation omitted); Bl(a)ck Tea Society v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004) (same for 2004 Democratic National Convention in Boston); Citizens for Peace in Space v. City of Colorado Springs, 477 F.3d 1212, 1222 (10th Cir. 2007) (same for NATO meeting)).

      Because the Capitol Police and Secret Service's restricted perimeter was consistent with the First Amendment, Defendant may not argue that he enjoyed a First Amendment right to protest in the building or protected grounds.

      E.  Other Arguments

The Government seeks to bar three additional types of evidence and arguments: those encouraging jury nullification, suggesting that Bru acted to defend himself or others on January 6, or introducing prior good acts or culpability relevant to other actors on January 6. Because this is a bench trial, the Court will deny as moot the Government's request to exclude evidence that could encourage jury nullification. As for the latter two categories, the Court believes that the more prudent course is to rule on specific issues as they arise at trial.

## IV.  Conclusion

The Court will accordingly grant in part and deny in part the Government's Motion *in Limine*. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 26, 2023